## PRICE v. SPENCER.

### LAYSON v. SAME.

### S. F. No. 1068; July 21, 1898.

#### 53 Pac. 1073.

**Deceit.**—Evidence of the Intrinsic Value of Stock is not admissible in an action for false representations as to value thereof, it having a well-known and fixed market value, and the inquiry having been as to this.

APPEAL from Superior Court, Fresno County; Stanton L. Carter, Judge.

Two actions against L. A. Spencer—one by Fannie Price and the other by M. A. Layson. From adverse judgments plaintiffs appeal. Affirmed.

W. H. Layson for appellants; F. H. Short for respondent.

SEARLS, C.—An appeal was taken in both of the above-entitled causes upon the same record, and it is stipulated, in substance, that they embody the same pleadings, facts and questions of law, and that "the judgment or order of the supreme court in said case of Price v. Spencer shall be the judgment and order made in the case of Layson v. Spencer," etc. Under this stipulation, we shall omit all further mention herein of the case of Layson v. Spencer, and confine ourselves to the case of Fannie Price v. L. A. Spencer, subject only to a final disposition of the two cases. The complaint charges in substance:

(1) That in April and May, 1893, defendant undertook, as the agent of plaintiff, to purchase for her some shares of the capital stock of the Fresno Loan and Savings Bank, a corporation. (2) Defendant was an officer, to wit, teller, in said bank, and well knew the value of the stock thereof, but the value thereof was unknown to plaintiff. (3) To induce plaintiff to purchase said stock, defendant falsely represented to plaintiff that the stock was worth from $129 to $130 per share, and was paying, and would pay, semiannual dividends of $6 per share. That defendant professed to know an old man in San Francisco who would sell a few shares of the stock at $112 per share, which he said was very cheap. That plaintiff, relying upon these representations, requested defendant to purchase for her five shares at $112, and forwarded to him $560 therefor. That defendant retained the money, and fraudulently transferred to her, on the books of the corporation, five shares of the capital stock belonging to himself, all of which he concealed from plaintiff. (4) Since January, 1893, the bank has paid no dividends. When the stock was transferred to plaintiff, it was, as defendant well knew, worth no more than $65 per share. (5) Plaintiff did not know until November, 1894, that the stock was the property of defendant; and she immediately gave notice of the rescission of the contract, offered to return the stock, and demanded a return of her money, all

of which was refused by defendant. (6) All of defendant's representations were false, and made to deceive, and did deceive, plaintiff.

There is another cause of action, stated in like words, showing that plaintiff, under like circumstances, purchased three other shares of the same capital stock at the same price.

Plaintiff prays for a decree adjudging the sale to be rescinded; that defendant holds in trust for plaintiff $896; that he pay the same over, with interest; and for costs.

The answer denies that the defendant undertook, as agent or otherwise, to purchase for plaintiff any shares of the capital stock of the Fresno Loan and Savings Bank; avers that he did, at the request of W. H. Layson, the attorney of plaintiff, procure from one Harvey Phinney five shares of said stock, and caused them to be transferred to plaintiff, for which she paid $112 per share. He denies that he was ever the owner of the stock, or had any interest therein, except that he purchased the same for $110 per share only when he found a purchaser therefor at $112 per share, and that the stock was thereupon transferred from Harvey Phinney directly to plaintiff, and that the interest of the defendant therein was but the $2 per share which he retained. Without further particularity, it may be said the answer denies all the allegations of fraud, and the facts upon which the same are predicated. The answer to the second cause of action proceeds upon the same lines as that to the first. The findings of the court negatived all the charges of false or fraudulent representations by defendant, alleged to have induced the purchase of the stock by the plaintiff; found that the defendant was not the owner of the stock purchased by plaintiff, but that he purchased the same, as the agent of plaintiff, at $110 per share, and charged her $112 per share, retaining to his own use the difference of $2 per share, amounting in the case of plaintiff to $16, which sum defendant held in trust for the plaintiff; and the latter had judgment for said sum of $16, and for her costs of suit.

The testimony in the case was sharply contradictory upon most of the issues, and, by all the precedents, the findings of the court below in such a case are conclusive here. Counsel for the appellant argues his case mainly from the standpoint of plaintiff's testimony, rather than from a review

of the whole case as made. Assuming his alleged facts as established, little difficulty would be experienced in reaching his conclusions. This we may not do, in the face of the record. Defendant admits in his answer, substantially, that he did, at the request of plaintiff, receive from one Harvey Phinney the stock in question, for which the plaintiff paid, and that he retained to himself $2 per share. This constituted him, pro tanto, the agent of the plaintiff. According to the findings of the court, this retention of $2 per share constituted the whole of defendant's offending. Appellant, however, contends that the evidence shows that defendant was the owner of the stock, and sold the same to plaintiff, concealing the fact of such ownership, etc. It is true that there was some evidence tending to show, if taken by itself, that defendant owned the stock. But, in the interpretation which appellant places upon it, it proves too much for her case. The agent of plaintiff was W. H. Layson, her brother. In the spring of 1893 he visited Fresno, in quest of an opportunity to invest some money for his two sisters, the plaintiffs in the two cases; called upon defendant, the teller of the bank aforementioned, with whom he had a conversation in reference to the bank and its stock; learned from defendant that a man had some of the stock for sale. Layson, on the 7th of May, wrote defendant, asking: "Is the stock you spoke to me about still for sale, or part thereof? What is price? I have forgotten." On the eighth day of May, defendant answered, in part, as follows: "I have still twenty-seven shares on hand. . . . . Can sell at same price as offered you ($112 per share) if sold at once." Later in May, Layson wrote the Fresno Savings Bank as follows: "Inclosed find draft for $896. Buy L. A. Spencer eight shares of Fresno Savings and Loan Bank stock—five shares for Fannie Price, three shares for M. A. Layson—not exceeding $112 per share. What does stock sell for in the market? [Signed] Layson." The draft was payable to the bank. On receipt by the bank of this letter and draft, defendant went to Harvey Phinney, who had previously offered to sell stock at $110, took him to the bank, where eight shares were transferred from Phinney to Fannie Price and M. A. Layson, as directed by their agent, W. H. Layson, and the certificates forwarded to their agent, W. H. Layson, in the name of the bank; the actions,

however, being formulated in the name of the bank by its teller, the defendant. On the 17th of June the bank received a like order from Layson for three shares, which were procured by the defendant from Phinney, through his agent, one Frank Laning, and transferred directly to plaintiff herein, as in the former case. In 1894 plaintiff ascertained that defendant had purchased the stock at $110 per share, and demanded of him the $2 per share which he had overcharged them. In response, defendant replied that: "I sold the stock to you fairly. Now, after I tell you that, practically, and, I believe, legally and morally, I owned the stock that I sold to you," etc. We have said that, if this evidence proves that defendant was the owner of the stock, it also proves too much. On their theory, they were informed by him before the purchase that he had the stock for sale, and if they knew this, and ordered it purchased from him, it is not perceived that there was any agency on his part, or that, in the absence of fraud, they had any cause for complaint. On this theory, there is no estoppel that can be urged against defendant. The case of Bank of Woodland v. Hiatt, 58 Cal. 234, simply holds that a purchaser has a right to rely upon representations of the seller as to facts not within the purchaser's knowledge, and the fact that the purchaser might by inquiry have obtained knowledge of the facts will not relieve the seller from responsibility. In the present case, if the seller was the owner of the stock, his first act in the premises was to inform the plaintiff of that fact. But we need not pursue this inquiry further. The court found that defendant purchased the stock as the agent of plaintiff, and that he was never the owner thereof. This finding is amply supported by the evidence. As before stated, the seller took or caused his stock to be taken to the bank, where it was indorsed and transferred by the bank to the plaintiff; and, as the bank held plaintiff's checks for the purchase price, we may reasonably infer that it paid the sellers. The defendant was the medium through which the transaction was consummated, and the fact that the seller did not know the purchaser is, upon the showing made, a circumstance of little importance. The whole pith of the transaction may be embodied in few words: The bank in question was, as a going concern, a prosperous institution, paying large dividends. Its stock had a well-defined market value at from $110 to $115 per share, and had been much

higher. Soon after plaintiff's purchase, there was a bank panic, under the pressure of which it closed its doors for a few days; then opened again, and struggled along until 1895, when, its securities and assets having shrunk greatly, it went into liquidation, and its stock fell to, say, one-half its former price.

Certain testimony was received at the trial in reference to the value of the property belonging to the bank in question, which was afterward stricken out. This ruling is assigned as error. The only object of such testimony was to show the intrinsic value of the stock. Under some circumstances, such testimony would doubtless be proper. Here, however, the stock was shown to have had a well-known and fixed, though variable, market value. It was as to this market value that plaintiff inquired from defendent and others before making her purchase. It afforded a fixed and certain standard of value, and was the proper criterion of such value. It was not, therefore, error to confine the evidence to such standard.

Numerous other errors in rulings made upon the trial are specified by appellant, most of which we think not well taken, and, as to all others, that a different ruling would not have affected any finding of fact or justified a different result. I advise that the judgment and order appealed from in each of the above-entitled cases be affirmed.

We concur: Haynes, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from in each of the above-entitled cases are affirmed.